**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for City Savings, F.S.B., in Receivership,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

**Federal Deposit Insurance Corporation, Appellant.**

No. 01–2524.

United States Court of Appeals, Third Circuit.

Argued July 24, 2002.

Decided Feb. 6, 2003.

Lawrence H. Richmond (Argued), Federal Deposit Insurance Corporation, Washington, DC, Barbara S. Woodall, Federal Deposit Insurance Corporation, Appellate Litigation Section, Washington, DC, Gerald A. Liloia, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for Appellant.

William B. McGuire (Argued), Tompkins, McGuire, Wachenfeld & Barry, Newark, NJ, Robert E. Kushner, D'Amato & Lynch, New York, NY, for Appellee.

Before NYGAARD, ROSENN, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

This case results from a series of banking errors that led to City Federal Savings Bank's insolvency from a defaulted loan. The FDIC, as receiver for the failed City Federal, sued National Union Insurance Company to recover on a fidelity bond indemnifying City Federal for losses incurred from employees' dishonest or fraudulent acts. The District Court granted summary judgment to National Union. We will affirm.

### I. Facts

Port Liberte Partners launched a large construction project in Jersey City, New Jersey. City Federal Savings Bank, a federally chartered bank, provided much of the funding for the Project. Later, National Union Fire Insurance Co. issued a financial institution bond to City Federal. This bond was essentially an insurance policy that indemnified City Federal or its subsidiaries for up to $20 million of losses caused by fraudulent or dishonest acts of City Federal employees. The policy stated that it would provide coverage for:

Loss resulting directly from dishonest or fraudulent acts committed by an employee acting alone or in collusion with others. Such dishonest or fraudulent acts must be committed with manifest intent:

(a) to cause the insured to sustain loss; and

(b) to obtain financial benefit for the employee or another person or entity. As used throughout this insuring agreement, financial benefit does not include any employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions.

City Federal became insolvent when Port Liberte defaulted on all of City Federal's loans to it. The Director of the Resolution Trust Corporation was appointed receiver for City Federal. City Federal filed a formal proof of loss with National Union, claiming that the loans made to Port Liberte were only made on the advice of George E. Mikula, an executive vice president of City Federal. It further contended that Mikula concealed critical information about Port Liberte. Finally it asserted that, had the City Federal Board of Directors known of this information, they would not have approved the loans. National Union denied the claim.

The FDIC took over as the receiver for City Federal and filed this lawsuit against National Union on behalf of City Federal, claiming breach of contract and seeking declaratory relief in the amount of $19,009,729. The FDIC alleges that Mikula intentionally concealed reports and appraisals, causing City Federal to make the loans upon which Port Liberte then defaulted. Specifically, the FDIC claims that National Westminster Bank, the co-lender on the Project, wrote off millions of dollars of losses on the loans they made to Port Liberte, and that Mikula knew this, but did not disclose this information to the Board. In addition, the FDIC asserts that Mikula knew, but did not disclose to the Board, that both internal and external appraisals showed that the Project was no longer economically feasible. The FDIC argues that although Mikula himself did not benefit from these transactions, he concealed this information for the benefit of Port Liberte or the subcontractors working on the Project.

### II. Discussion

The FDIC asserts that the District Court erred by adding a requirement to

the National Union bond that the financial benefit obtained by a third party must be an "improper" benefit. We agree that the District Court erred in this respect. A requirement that the benefit be "improper" is not found in the language of the National Union bond. Nonetheless we will affirm because to obtain coverage, all that need be shown is a manifest intent to provide a financial benefit to a third party. The FDIC failed to show that Mikula had such manifest intent.

In *Resolution Trust Corp. v. Fidelity & Deposit Co. of Maryland,* 205 F.3d 615, 626 (3d Cir.2000) ("*F&D*"), we analyzed a bond virtually identical to the National Union bond at issue, and determined that

> the following elements [must] be present in order for a loss to constitute a covered event: (1) the insured must incur a loss; (2) the loss must have "result[ed] directly;" from dishonest or fraudulent acts of an employee or employees; (3) the employee must have committed the acts with the "manifest intent" to cause the insured to suffer the loss sustained ...; and (4) the employee must have committed the acts with the "manifest intent" to obtain a financial benefit for the employee or a third party, and the financial benefit obtained must not be of the type covered by the exclusionary clause.

205 F.3d at 636. In *F&D*, if the defendant could establish that any one of these requirements was not met, the loss would not constitute a covered event, and summary judgment in favor of the defendant would be appropriate.[1] Therefore, for the FDIC to recover under the National Union bond, it must show that Mikula acted with both the specific intent to cause City Federal a loss and with the specific intent to

obtain a financial benefit for himself or for a third party. *See id.* at 642.

Although it is generally difficult to resolve summarily a question of intent that is material to a cause of action, a plaintiff must make a sufficient initial evidentiary showing of the requisite intent to survive the motion for summary judgment. *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3d Cir.1993). We stated in *F&D,* "the term 'manifest intent' requires the insured to demonstrate that it was the offending employee's purpose or desire to obtain financial benefit for himself or a third party, and to cause the insured to sustain a loss." 205 F.3d at 644.

■ Here, when viewing the facts in the light most favorable to City Federal, the record facts fall short of a threshold showing that Mikula had the "manifest intent" to cause City Federal a loss and to benefit a third party. First, most of the facts that Mikula allegedly concealed from the Board were well known by many other City Federal executives. Second, these allegedly concealed facts did not definitively show that the Project was a failure. Instead, they showed simply that the Project had problems. Third, Mikula did not have authority to disburse loan funds, but rather made recommendations to the Board. And finally, although some of the loan proceeds were paid directly to subcontractors for work already completed, this was to assuage the subcontractors, who were threatening to leave the job.

### III.

We hold that because the undisputed evidence shows that Makula and others did not have the manifest intent to obtain a

---

1. In *F&D*, we held that summary judgment was improper because, among other reasons, we found that "the circumstances present[ed] a genuine issue of material fact concerning [the bank executives'] manifest intent to cause City Federal to sustain the ... loss." 205 F.3d at 652.

financial benefit for themselves or for a third party, the District Court committed no error in entering summary judgment for the defendant. For this reason, we will affirm the judgment of the District Court.